Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

Jordan L. Lurie (SBN 130013)
Ari Y. Basser (SBN 272618)
**POMERANTZ LLP**
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
E-Mail: jllurie@pomlaw.com
          abasser@pomlaw.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JIMY RUIZ and MICHAEL CAVALLERO on behalf of themselves and all others similarly situated,**<br><br>                    **Plaintiffs,**<br><br>              **v.**<br><br>**CELSIUS HOLDINGS INC.**<br><br>                    **Defendant.** | **CASE NO.:** 3:21-cv-00128-GPC-KSC<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Gonzalo P. Curiel<br>Date: July 23, 2021<br>Time: 1:30 p.m.<br>Courtroom: 2D |

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................1

II.   ARGUMENT ..................................................................................................3

    A.   STANDARD ON A MOTION TO DISMISS ......................................3

    B.   PLAINTIFFS HAVE STANDING ....................................................4

    C.   PLAINTIFFS SATISFY PLEADING REQUIREMENTS UNDER
       FED.R.CIV.P 9(b) ..........................................................................7

    D.   PLAINTIFFS SATSIFY THE REASONABLE CONSUMER
       STANDARD ....................................................................................10

    E.   PLAINTIFFS PLEAD AN EXPRESS WARRANTY CLAIM.......................13

    F.   PLAINTIFFS STATE CLAIMS UNDER CALIFORNIA
       CONSUMER PROTECTION STATUTES ...........................................15

          1.   Plaintiffs State a Claim Under California's Unfair Competition
              Law ....................................................................................15

          2.   Plaintiffs State a Claim Under California's False Advertising
              Law ....................................................................................18

          3.   Plaintiffs State a Claim Under the Consumer Legal Remedies
              Act....................................................................................19

    G.   PLAINTIFFS ADEQUATELY PLEAD NEW YORK GENERAL
       BUSINESS LAW CLAIMS................................................................20

          1.   Plaintiffs Adequately Plead Celsius' Labeling is Deceptive to a
              Reasonable Consumer ..........................................................21

          2.   Plaintiffs Adequately Plead Economic Injury.......................................23

    H.   PLAINTIFFS STATE A CLAIM FOR RESTITUTION BASED ON
       QUASI-CONTRACT/UNJUST ENRICHMENT ...................................24

III.  CONCLUSION ..............................................................................................25

1

# **TABLE OF AUTHORITIES**

2

3

# **CASES**

4

5

*Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W (CAB), 2010 U.S. Dist.
　　LEXIS 14160 (S.D. Cal. Feb. 17, 2010) ......................................................13

6

7

*Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 U.S.
　　Dist. LEXIS 37617 (S.D. Cal. Mar. 7, 2018)...............................................11

8

9

*Anderson v. Jamba Juice Co.,* 888 F. Supp. 2d 1000 (N.D. Cal. 2012)...................6

10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).............................................................3

11

12

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 U.S.
　　Dist. LEXIS 57348 (N.D. Cal. May 26, 2011)................................................8

13

14

*Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317 (S.D. Cal. 2019).........17

15

*Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).............................4

16

*Berger v. Home Depot USA, Inc., 741 F.3d 1061 (9th Cir. 2014)* ..........................24

17

18

*Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007)..................17

19

*Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962)*...........................................7

20

*Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) ....................................................21

21

22

*Branca v. Bai Brands, Ltd. Liab. Co.*, No. 3:18-cv-00757-BEN-KSC, 2019
　　U.S. Dist. LEXIS 37105 (S.D. Cal. Mar. 7, 2019)........................................13

23

24

*Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 U.S. Dist.
　　LEXIS 150775 (S.D. Cal. Sep. 3, 2019) .......................................................14

25

26

*Bruton v. Gerber Prods. Co*., 703 Fed. App'x 468 (9th Cir. 2017)........................10

27

28

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20
　　Cal.4th 163, 180 (1999)................................................................................16

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............8

*Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020)..........11

*Clark v. Westbrae Nat., Inc.*, No. 20-cv-03221-JSC, 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020)...................................................................17

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (2006)....................................................................................... 18-20

*Colpitts v. Blue Diamond Growers*, No. 20 Civ. 2487, 2021 WL 981455 (S.D. N.Y. March 16, 2021) .........................................................................24

*Cosgrove v. Oregon Chai, Inc.*, No. 19 Civ. 10686, 2021 WL 706227 (S.D. N.Y. Feb. 22, 2021) ...............................................................................22

*Cortina v. Goya Foods, Inc., 94 F. Supp. 3d 1174 (S.D. Cal. 2015)* .....................24

*Cox v. Microsoft Corp.*, No. 105193/2000, 2005 WL 3288130 (N.Y.Sup.Ct. July 29, 2005)..........................................................................23

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ..........................4

*Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018) ..........................................3, 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000)................4

*Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 343 (1999)...............................21

*Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-05222-VC, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014)................................................14

*Golden v. Home Depot, U.S.A., Inc.*, No. 1:18-cv-00033-LJO-JLT, 2018 U.S. Dist. LEXIS 91182 (E.D. Cal. May 31, 2018)........................................6

*Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019)....................................................10

*Hawkins v. Kroger Co.,* 906 F.3d 763, 768 (9th Cir. 2018) .....................................4

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG
    (PLAx), 2014 U.S. Dist. LEXIS 149732 (C.D. Cal. Sep. 4, 2014)................8

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
    Practices, & Prods. Liability Litig*., 754 F. Supp. 2d 1145
    (C.D. Cal. 2010) .........................................................................................7

*Janney v. Mills*, 944 F. Supp. 2d 806 (N.D. Cal. 2013) ...........................................7

*Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, 2012 U.S. Dist. LEXIS
    161300 (N.D. Cal. Nov. 9, 2012) ................................................................11

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012).......................21

*Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 288-89
    (S.D.N.Y. 2014)..........................................................................................23

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).........................................4

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (Ct. App. 2003)...............11

*Lazaroff v. Paraco Gas Corp*., 967 N.Y.S.2d 867, 2011 WL 9962089
    (N.Y. Sup. Ct. Feb. 25, 2011)....................................................................23

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115 (2007) .........16

*Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718 (9th Cir. 2007).....................17

*Mantikas v. Kellogg Co*., 910 F.3d 633, 637 (2d Cir. 2018) ...................................23

*Mason v. Reed's Inc*., 18-cv-10826, 2021 WL 293326
    (S.D.N.Y. Jan. 28. 2021) .....................................................................23, 25

*McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020) .......................................6

*McKinniss v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 U.S. Dist.
    LEXIS 96106 (C.D. Cal. Sep. 19, 2007).....................................................14

*Melendez v. ONE Brands, LLC*, No. 18-cv-06650, 2020 WL 1283793
    (E.D. N.Y. March 16, 2020)........................................................................22

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ..........6

*Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th 39, (2003)...............................19

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015)...........................................23

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85
    N.Y.2d 20, 25 (1995).....................................................................................21

*Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 676-77 (2006) .................15

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ..................................4, 16

*Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94
    (E.D.N.Y. Aug. 24, 2020) ........................................................................18, 22

*Silva v. Smucker Natural Foods, Inc.*, No. 14–CV–6154, 2015 WL 5360022
    (E.D.N.Y. Sept. 14, 2015) .............................................................................24

*Silver v. BA Sports Nutrition, LLC*, No. 20-cv-00633-SI, 2020 U.S. Dist.
    LEXIS 99320 (N.D. Cal. June 4, 2020) ........................................................10

*Sims v. Campbell Soup Co.*, No. EDCV 18-668 PSG (SPx), 2018 U.S. Dist.
    LEXIS 222535 (C.D. Cal. Sep. 24, 2018).....................................................11

*Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018
    U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018) .....................................11

*Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033 (9th Cir. 2010)............................3

*Stutman v. Chemical Bank,* 95 N.Y.2d 24, 29 (2000) .............................................21

*Twohig v. Shop-Rite Supermarkets, Inc.*, No. 20-CV-763, 2021 WL 518021
    (S.D. N.Y. Feb. 11, 2021)..............................................................................22

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)...............................7

*Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ...........15, 19

*Watts v. Jackson Hewitt Tax Service*, 579 F. Supp, 2d 334     (E.D.
    NY 2008).........................................................................................................21

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) ................................................. 9

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (Ct. App. 1986) ...... 13

*Williams v. Gerber Prod. Co*., 552 F.3d 934 (9th Cir. 2008) .................. 6, 10, 13,16

*Zixiang Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013) ...................................................... 3


## STATUTES

21 C.F.R §101.22 .................................................................................... *passim*

21 U.S.C. §343 ............................................................................................... 16

38 Fed. Reg. 33,285 (December 3, 1973) .......................................................... 1-2

Cal. Bus. & Prof. Code § 17500 ........................................................................ 18

Cal. Bus. & Prof. Code §§17200 ....................................................................... 15

Cal. Civ. Code § 1770 ........................................................................................ 19

Cal. Com. Code §2313 ....................................................................................... 13

Cal. Health & Safety Code §110100 ................................................................. 2, 16

Federal Food Drug & Cosmetic Act, 21 U.S.C. §§ 301-392 ........................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 3

Federal Rule of Civil Procedure 9(b) ............................................................ 7-10

General Business Law §350 ......................................................................... 20-22

General Business Law §349 ......................................................................... 20-22

1

## <u>OTHER AUTHORITIES</u>

2

3

CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES
(4th ed. 2004)..................................................................................19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

The facts of this case are straightforward. Celsius manufactures a line of beverages that are characterized with specific fruits, (e.g., orange). The fruits are prominently displayed both by name and vignette on the product's principal display panel giving consumers the reasonable impression that the product contains at least enough of that fruit to impart the promised flavor.  Despite these representations, however, Celsius beverages do not contain *any* of their characterizing fruits and are thereby deceptively and misleadingly labeled.

The law is unequivocal. "[I]f the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, *such flavor shall be considered the characterizing flavor* and shall be declared in the following way:…..If the food is one that is commonly expected to contain a characterizing food ingredient…. and the food contains natural flavor derived from such ingredient and…. the food contains no such ingredient, the name of the characterizing flavor … and shall be immediately followed by the word "flavored…" 21 C.F.R. §101.22 (i) (emphasis added).

The U.S. Food and Drug Administration ("FDA") recognized that although "[i]t is not possible to set out all the circumstances under which a flavor representation is or is not implied, [a]ny use of a vignette showing a fruit or vegetable clearly constitutes such a representation…. [Moreover,] use of a specific fruit flavor in the food name, such as "orange soda," does constitute such a representation…." 38 Fed. Reg. 33,285 (December 3, 1973).

The underlying objective of the law is equally clear and compelling -- to protect consumers and to ensure that they are able to make informed purchasing decisions.

As the FDA noted, where flavor representations are made on the principal display panel "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation." *Id.* at 33,286. "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient [] is not at all subtle, and is very important to the value of the product and thus to the consuming public." *Id.* at 33,285.

Plaintiffs' First Amended Complaint ("FAC") sufficiently alleges that Defendant's labels violate federal labeling requirements as well as California's Sherman Food, Drug & Cosmetic Law ("SFDCL") which has adopted the Federal Food Drug & Cosmetic Act, 21 U.S.C. §§301-392 ("FDCA") in its entirety as the law of the state. Cal. Health & Safety Code §109875 *et. seq.* In fact, Defendant does not, because it cannot, contest that its conduct violates the law. Rather, it ignores the law and instead baldly contends that no reasonable consumer would believe that Celsius' Products actually contain the fruits which are depicted by name and vignette on its labels. Not only is this contention unfounded in law or logic, it is a fundamental issue of fact that is not properly resolved on a motion to dismiss.

Defendant takes great pride in calling its beverages dietary supplements, touting their structure/function claims (e.g., "health energy," "accelerates metabolism" and "burns body fat"), free-from claims (*e.g.*, "no preservatives artificial colors or flavors") and healthful ingredients (*e.g.*, guarana, ginger root), all of which are which are carefully crafted to imbue Celsius' beverages with a health halo, and to set them apart from competitors. Incongruously and disingenuously, however, Defendant now argues that those same consumers, the ones whom it expects to read and rely upon these claims in making a purchasing decision, would somehow single out and ignore the fundamental claim relating to the beverage's characterizing flavor. Predicated on this flawed reasoning, Defendant argues that no reasonable consumer looking at a picture of a fruit along with its name emblazed prominently on the product's principal display panel would reasonably expect that the product actually contained that fruit.

In making its arguments, Defendant asks this Court to ignore: (1) federal and state laws that unequivocally require manufacturers to clearly indicate when their products are flavored, (2) the legislative history behind the law which confirms such information is material to consumers -- the absence of which is deceptive, (3) an abundance of case law that has recognized similar claims give rise to the causes of action alleged herein, and (4) black letter law holding that only in rare situations can allegations such as those set forth in the FAC, be determined on a motion to dismiss.

As demonstrated below, Plaintiffs' FAC has alleged facts with requisite particularity to confer standing and meet the threshold elements of all their causes of action. Respectfully, Defendant's motion should be denied in its entirety.

## II.   ARGUMENT

### A.   STANDARD ON A MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the pleadings fail to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018).

1

**B.    PLAINTIFFS HAVE STANDING**

2      Article III's case-or-controversy requirement requires the following for each of

3  Plaintiffs' claims: (1) actual or threatened injury, (2) which is fairly traceable to the

4  challenged conduct, (3) for which a favorable decision would likely provide

5  redress. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000).  In

6  a class action, standing is satisfied if at least one named plaintiff meets the

7  requirements. *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).

8      To establish standing under California's Unfair Competition Law ("UCL")

9  False advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA")

10  plaintiffs must meet an economic injury-in-fact requirement, which demands no more

11  than the corresponding requirement under Article III of the U.S. Constitution. *Reid v.*

12  *Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Plaintiffs must "show that

13  they have suffered injury in fact and have lost money or property as a result of the

14  unfair competition." *Hawkins v. Kroger Co.,* 906 F.3d 763, 768 (9th Cir. 2018). "To

15  properly plead an economic injury, a consumer must allege that she was exposed to

16  false information about the product purchased, which caused the product to be sold at

17  a higher price, and that she would not have purchased the goods in question absent

18  this misrepresentation."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th

19  Cir. 2018). Accordingly, a consumer's allegation that he would not have bought the

20  product but for the misrepresentation is sufficient to allege causation and economic

21  injury. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).

22      Plaintiffs clearly pled that they read and relied on Defendant's offending label

23  statements, were deceived by them, as a result paid more for the products than they

24  otherwise would have, and were economically damaged thereby. As such, the standing

25  requirement is met.

26      Celsius argues that Plaintiffs' economic injury is merely their "subjective

27  belief," and any injury is not traceable to Celsius because it did nothing wrong.  Def.

28

Mem. at 7-8.[1] Defendant's argument misses, or purposefully ignores, Plaintiffs' express allegations, as well as its underlying legal basis. Where Celsius says it did nothing wrong, Plaintiffs have alleged that Celsius sold beverages claiming to be flavored by certain fruits which the products did not contain. E.g., ¶¶ 35-38.[2] Plaintiffs painstakingly described Celsius' legal obligation to distinguish between products that contain their characterizing ingredients and those that don't, as well as the misleading and deceptive nature of failing to do so. ¶¶ 53-64. Plaintiffs each alleged that they "believed the representations on the Products' principal display panels -- that [they were] consuming beverages that contained the fruits depicted by name and vignette. ¶¶ 13,21. Each Plaintiff "believed that Defendant lawfully marketed and sold the Products, "relied on Defendant's labeling" and were "misled thereby." ¶¶13-14, 21-22. Moreover, Plaintiffs "would not have purchased the Products, or would have purchased the Products on different terms" had they known the truth and were "injured in fact and lost money as a result of Defendant's improper conduct." ¶¶ 16,17, 24, 25. Such allegations are sufficient to demonstrate economic harm at this procedural juncture, and to confer standing. *See, e.g., Rojas v. Gen. Mills, Inc., No. 12-cv-05099-WHO, 2014 U.S. Dist. LEXIS 41315 *28 (N.D. Cal. Mar. 26, 2014)* (Courts have "routinely held that pleading that mislabeling has caused the plaintiff to purchase products he or she might not have otherwise purchased suffices for statutory standing").

It is beyond reproach, that should the trier of fact in this matter find these labels to be in violation of the laws pled herein, and that as a result Plaintiffs and the class were damaged, legal redress would be provided.

---

[1] Defendant's Memorandum of Law in Support of Motion to Dismiss First Amended Complaint ("Def. Mem.")

[2] All ¶ references are to Plaintiffs' First Amended Complaint ("FAC"), Dkt. No. 13.

Defendant's reliance on *McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020) is misplaced. *McGee* involved a product that contained partially hydrogenated oil ("PHO"). Plaintiff alleged that consuming the product caused her economic injury because she believed she was purchasing a safe product when she was not. The court concluded that this theory was untenable because the PHO was not only disclosed in the ingredient list, there were no allegations that the product label was misleading. As such, the plaintiff's purchases were not based on any false or misleading representations by the defendant. In contrast, here, Plaintiffs specifically claim the product labels were misleading as Defendant promised, by both name and vignette, a product that contained an ingredient which, in truth, it did not have.

Ultimately, the determination of "whether a business practice is deceptive will usually be a question of fact not appropriate for determination on a motion to dismiss *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 939 (9th Cir. 2008). Indeed, it is a "rare situation" where "granting a motion to dismiss is appropriate" *Id.*[3]

---

[3] Separately, Defendants complain that "the complaint refers only to Sparkling Orange specifically, but the broad allegations of the FAC make it appear that Plaintiffs are complaining about every flavor without exception." Def. Mem. at 12. While the FAC uses Sparkling Orange as an exemplar, since both Plaintiffs purchased that product, it could have just as easily been another Celsius fruit flavored product. The FAC also makes clear that the allegations are on behalf of all similarly labeled Celsius Products. ¶¶ 12, 20, 28 fn.3. "The majority of [] courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). "Products are substantially similar if the resolution of the asserted claims will be identical between the purchased and unpurchased products. If the misleading aspect of both the purchased and unpurchased products can be examined without a context-specific analysis of each product's label, the products are substantially similar." *Golden v. Home Depot, U.S.A., Inc.*, No. 1:18-cv-00033-LJO-JLT, 2018 U.S. Dist. LEXIS 91182 *1 (E.D. Cal. May 31, 2018); *Anderson v. Jamba Juice Co.,* 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012)(finding that "[t]here is sufficient similarity between the products purchased . . . because the

### C. PLAINTIFFS SATISFY PLEADING REQUIREMENTS UNDER FED.R.CIV.P 9(b)

Federal Rule of Civil Procedure 9(b) provides that a party must state with particularity the circumstances constituting fraud or mistake so that a defendant can prepare an adequate answer from the allegations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106.[4]

Celsius baldly contends that Plaintiffs do not plead allegations with sufficient particularity to withstand scrutiny under Fed.R.Civ.P. 9(b) but fail to cite a single case that substantively supports their argument. They do not, because they cannot, and as demonstrated below, Plaintiffs' allegations satisfy the requirements of Fed.R.Civ.P 9(b).

"In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading." *Janney v. Mills*, 944 F. Supp. 2d 806 , 815 (N.D. Cal. 2013). Allegations regarding consumer reliance on misleading product labels routinely satisfy the requirements of 9(b). *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Prods. Liability Litig.*, 754 F. Supp. 2d 1145, 1172 n.18  (C.D. Cal. 2010) ("Allegations of representations from product labels and statements that, had consumers not been deceived by the labels, they would not have purchased the product, are sufficient to plead under Rule 9(b)"). "Many courts in California have

---

same alleged misrepresentation was on all of the [products] regardless of flavor" and all of the products contained the same challenged ingredients).

[4] In the event allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g., Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir. 1962).

---

applied a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims. The "who" are the defendants; the "what" are their allegedly misleading claims; the "when" is the proposed class period, during which those claims were made; the "where" is the offending label; and the "how" is the plaintiff's explanation why the defendant's claims are misleading." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 U.S. Dist. LEXIS 149732 *44 (C.D. Cal. Sep. 4, 2014); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010)(consumers of granola bars satisfied Rule 9(b) by identifying in their complaint the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used). Plaintiffs here have similarly satisfied the requirements of 9(b) by alleging:

> **Who**: Defendant Celsius  ¶¶27-28;
>
> **What**: A label claim wherein Celsius fails to indicate that its product is flavored, despite the fact it is entirely devoid of its characterizing ingredient. ¶¶35-38;
>
> **When**: Throughout the applicable Class Periods.¶¶7, 85;
>
> **Where**: The principal display panels of Celsisus product labels. ¶¶36-38;
>
> **How** the statements were misleading: (1) Celsius violated the SFDCL by failing to properly indicate on the principal display panel that its Products did not contain their characterizing ingredients, but instead were flavored; (2) Plaintiffs purchased Celsius products reasonably relying on Celsius' misrepresentations; and (3) Plaintiffs were thus deceived by Celsius' labeling and damaged thereby. ¶¶ 12-18, 20-25, 35-38, 53-64, 107-110.

This is sufficient to satisfy 9(b). *See, e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 U.S. Dist. LEXIS 57348 *15-16 (N.D. Cal. May 26, 2011)(finding 9(b) satisfied where plaintiff alleged: (1) the "who" was defendants (2) the "what" was the statement that product was "all natural;" (3) the "when" as "since at

least 2006," and "throughout the class period;" (4) the "<u>where</u>" was on the product labels; (5) the "<u>how</u> the statements were misleading" is the allegation that defendants did not disclose that the product contained synthetic ingredients).

"The purposes of Rule 9(b)'s heightened pleading standard are threefold: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 1189 *34 (S.D. Cal. Jan. 3, 2018). "[S]o long as a plaintiff identifies the label claim at issue, where the statement was made, why it was fraudulent, and how it affected the plaintiff, those three purposes stated above are served and 9(b) is satisfied." *Id.* at *35; *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 *49 (N.D. Cal. Oct. 2, 2013) (Finding plaintiff met the heightened pleading standards of 9(b) because the complaint identifies the regulations that the representations allegedly violated, states why the representations allegedly violate these regulations, and states why a reasonable consumer would be misled by these alleged regulatory violations.)

Defendant also contends that the "FAC is rife with improper conclusory allegations of fraud because Plaintiffs fail to say how Celsius knew the laws Plaintiffs are referring to, or otherwise should have known that their conduct violated that law. Def. Mem. at 12. Defendant's argument is disingenuous for several reasons. First, the FDCA and SFDCL have been the law binding food and drink manufacturers for decades and well before Celsius started selling beverages. Second, Celsius admits in its Memorandum that it is subject to the FDCA and DSHEA. Def. Mem. at 5. Finally, Celsius' public filing on Form 10-K affirms their knowledge and understanding that "[t]he production, distribution and sale of our products in the United States is subject

to *the Federal Food, Drug and Cosmetic Act, the Dietary Supplement Health and Education Act of 1994*, the Occupational Safety and Health Act, various environmental statutes and various other federal, state and local statutes and regulations applicable to the production, transportation, sale, safety, *advertising, labeling and ingredients of such products* (emphasis added).[5]

Plaintiffs have satisfied their pleading obligations under Fed.R.Civ.P. 9(b).

### D.    PLAINTIFFS SATSIFY THE REASONABLE CONSUMER STANDARD

Deceptive labeling claims under the UCL, CLRA, and FAL are generally evaluated by whether a "reasonable consumer" would be likely to be deceived. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir.2008). As a threshold matter, **Defendant's reasonable consumer standard** argument does not apply to Plaintiff's unlawful claims. A claim under the UCL's unlawful prong has just one element -- the violation of any predicate law or regulation. The reasonable consumer standard is not an element of 21 C.F.R. §101.22 and is not an element of the SFDCL which adopts the FDCA in its entirety. Accordingly, the reasonable consumer standard does not apply to Plaintiffs' claim under the unlawful prong of the UCL.[6]

With respect to Plaintiffs other causes of action, the reasonable consumer standard requires a probability "that a significant portion of the general consuming

---

[5] Celsius Holdings, Inc, Annual Report Pursuant to Sections 13 or 15(D) of The Securities Exchange Act of 1934 For the fiscal year ended December 31, 2019 on Form 10-K ("Form 10-K")

[6] See, *Bruton v. Gerber Prods. Co*., 703 Fed. App'x 468, 471-72 (9th Cir. 2017) ("[t]he best reading of California precedent is that the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation"); *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019); *Silver v. BA Sports Nutrition, LLC*, No. 20-cv-00633-SI, 2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020).

public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 495 (Ct. App. 2003).  In general, what a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss. *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 U.S. Dist. LEXIS 37617 *15-17 (S.D. Cal. Mar. 7, 2018); *Sims v. Campbell Soup Co.*, No. EDCV 18-668 PSG (SPx), 2018 U.S. Dist. LEXIS 222535 *19-20 (C.D. Cal. Sep. 24, 2018)(whether a reasonable consumer would be materially deceived is a question of fact that is not generally appropriate for determination on a motion to dismiss); *Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, 2012 U.S. Dist. LEXIS 161300 (N.D. Cal. Nov. 9, 2012)(rejecting Defendant's argument that Plaintiff would have had to be familiar with FDA regulations in order to plausibly be deceived, because the issues Defendant raised ultimately involved questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument was therefore beyond the scope of a 12(b)(6) motion).

Defendant's reliance on *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020) is misplaced.  In *Cheslow,* the Court considered whether reasonable consumers would be deceived into believing that a product labeled "Premium baking chips Classic White" consisted of white chocolate. Plaintiffs in *Cheslow*, unlike the case at bar, admitted that there was no affirmative misrepresentation (*i.e.,* the label did not say "chocolate.") Indeed, the court concluded that the heart of the alleged deception was the modifying adjective "white" which defined the color and not the food itself. Similarly, the word "premium," was no more than generalized boasting. Neither of the terms reasonably suggested that the product contained chocolate.  In contrast, Celsius makes unequivocal affirmative representations about the fruit contents of its product by stating it is an, e.g., "Orange" beverage and bolstering it with a picture of an orange slice.  FAC at page 8.

Defendant's reliance on *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018) is similarly

misplaced. In *Solak*, defendant sold a product called "Garden Veggie Straws," which in addition to its name also contained a vignette of a tomato and spinach. Plaintiffs alleged that the product name and accompanying vignette created the impression that the vegetables depicted on the label were "present in an amount greater than is actually the case." *Id.* at *3. Unlike the case at bar, the *Solak* plaintiffs did not take issue with the product's characterizing flavor ("Sea Salt"), which was a prominent ingredient in the product.  Nor did they allege that the product failed to contain the vegetables depicted by vignette (*i.e.*, spinach and tomato), because like salt, they too were present in the product. In dismissing the complaint, the Court stated that "the Complaint itself recognizes—that each of the Straws' five Primary Ingredients are a direct byproduct of vegetables. Therefore, it is in no way misleading for Defendant to call the Product "Veggie" straws, since that label truthfully captures the fact that Defendant uses vegetable-based products in the Straws' recipe." *Id.* at *9. In contrast, the case at bar involves a product that makes an unequivocal representation about its charactering flavor and yet it is completely devoid of that characterizing ingredient.

Defendant also argues that no reasonable consumer could be deceived by the label claim because an examination of the ingredient list on the back side of the packaging reveals that the product contains natural flavors and is devoid of its characterizing ingredients (*e.g.*, "[i]f plaintiffs had simply read the ingredients they would have seen the product was not a juice product"). Def. Mem at 10. This argument, however, was squarely rejected by the Ninth Circuit over a decade ago, and has been black letter law of this Circuit since.

> The district court suggests that no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified. We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with

FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008).

### E.   PLAINTIFFS PLEAD AN EXPRESS WARRANTY CLAIM

To plead a claim for breach of express warranty, the plaintiff must allege the terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his or her injury. *See, Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (Ct. App. 1986). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code §2313(1)(b). "Statements made by a manufacturer through its advertising efforts can be construed as warranty statement." *Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W (CAB), 2010 U.S. Dist. LEXIS 14160 (S.D. Cal. Feb. 17, 2010). Such statements necessarily include those made on product labels. *Branca v. Bai Brands, Ltd. Liab. Co.*, No. 3:18-cv-00757-BEN-KSC, 2019 U.S. Dist. LEXIS 37105 (S.D. Cal. Mar. 7, 2019).

Here, Celsius made an affirmation of fact and provided a description of its goods by claiming that the Products contained a particular fruit. It did so by prominently stating on the principal display panel the name of the characterizing fruit and supporting it with a related vignette. ¶¶ 36-37. The description of the product, specifically that it contained its characterizing fruit ingredient, formed part of the basis of the bargain. ¶¶ 13-15, 21-23. Despite the representation, however, the affected Celsius Products do not contain their characterizing ingredients and Plaintiffs suffered economic injury as a result.  ¶¶ 17, 25. These allegations are more than sufficient to maintain a breach of express warranty claim. *Allred v. Frito-Lay N. Am.,*

1  *Inc.*, No. 17-CV-1345 JLS (BGS), 2018 U.S. Dist. LEXIS 37617 *18-19 (S.D. Cal.

2  Mar. 7, 2018); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-05222-VC, 2014

3  U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014)(representation on product

4  packaging sufficient to state a claim for breach of express warranty); *Vicuña v. Alexia*

5  *Foods, Inc.*, No. C 11-6119 PJH, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27,

6  2012) ("all natural" statement on food label constituted an express warranty).

7      Defendant argues Plaintiff does not have an express warranty claim because

8  "the labeling of cans of Celsisus with pictures of fruit is not an affirmation of fact or

9  promise that the product contains fruit juice.. and [t]he image of the orange wedge is

10  there to show the contents is orange flavors." Def. Mem at 14. To support this factual

11  conclusion, Defendant relies on the holdings of *McKinniss v. Kellogg USA*, No. CV

12  07-2611 ABC (RCx), 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sep. 19, 2007) and

13  *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 U.S. Dist. LEXIS 150775

14  (S.D. Cal. Sep. 3, 2019). Both cases, however, are factually and legally inapposite.

15      In *McKinniss*, Plaintiffs allege that three aspects of the front panel of

16  Defendants Froot Loop cereal misleadingly suggested that the product contains actual

17  fruit: (1) use of the word "Froot" in the name; (2) depiction of brightly colored rings

18  of cereal that Plaintiffs claim resemble fruit; and (3) the banner stating "Natural Fruit

19  Flavors" which they claim is in "disproportionately small type." In dismissing

20  Plaintiffs' claims, the Court found that "froot" is a fanciful name, the brightly colored

21  rings were not pictures of fruit and the statement the product was "flavored" was

22  exactly what was contemplated by 21 CFR §101.22. This is in stark contrast to the

23  facts at bar, where: (1) the term "Orange" is not fanciful or subject to interpretation,

24  but rather can only mean the actual fruit; (2) the product contains an unmistakable

25  picture of an "orange wedge," as opposed to an orange-colored ring or any other

26  ambiguous design, and most critically, (3) the label is devoid of any "flavoring"

27  designation as required by 21 C.F.R. §101.22.

28

In *Brown*, Plaintiff alleged that the packaging of Starbucks' Sour Gummies falsely informs consumers that the candies contain only natural ingredients because the front package states "apple, watermelon, tangerine and lemon-flavored candies" and does not disclose the presence of artificial flavors.  The Court sustained plaintiff's UCL, FAL and CLRA claims due to defendant's omission of a legally required disclosure under §101.22, but denied plaintiff's express warranty claim because the label accurately described the inclusion of "fruit flavors," and did not otherwise contain an affirmative representation on which a warranty claim can be based.  In contrast, here, the FAC alleges that the label contains affirmative statements both in name (*e.g.,* Orange) and vignette stating that the product contains a specific fruit, thereby creating the underlying warranty.

Plaintiffs' express warranty should be sustained.

## F.   PLAINTIFFS STATE CLAIMS UNDER CALIFORNIA CONSUMER PROTECTION STATUTES

### 1.   Plaintiffs State a Claim Under California's Unfair Competition Law

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." CAL. BUS. & PROF. CODE §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.*, § 17200). The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services thus its scope is broad and designed to cover a wide range of conduct. *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 676-77 (2006). Because Section 17200 is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent. *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 884 (C.D. Cal. 2013). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of

1   fact which requires consideration and weighing of evidence from both sides and which

2   usually cannot be made on [a motion to dismiss]." *Linear Tech. Corp. v. Applied*

3   *Materials, Inc.*, 152 Cal.App.4th 115, 134-35 (2007) (internal quotation marks

4   omitted). It is a "rare situation in which granting a motion to dismiss is appropriate"

5   for these kinds of claims. *Williams,* 552 F.3d 934, 939; *Reid v. Johnson & Johnson*,

6   780 F.3d 952, 958 (9th Cir. 2015) (same).

7        Plaintiffs' FAC support an allegation under each prong of the UCL.

8        By proscribing any unlawful business practice, Section 17200 borrows

9   violations of other laws and treats them as unlawful practices that the unfair

10   competition law makes independently actionable.  *Cel-Tech Communications, Inc. v.*

11   *Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999). Plaintiff has detailed

12   the violation of 21 C.F.R. §101.22.  The FAC also sufficiently alleges a violation of

13   the SFDCL which adopts the federal labeling requirements as the food labeling

14   requirements of the state. Cal. Health & Safety Code § 110100 ("All food labeling

15   regulations and any amendments to those regulations adopted pursuant to the federal

16   act, in effect on January 1, 1993, or adopted on or after that date shall be the food

17   regulations of this state."). In addition to this blanket provision, the SFDCL

18   specifically adopted certain provisions that mirror or incorporate by reference the

19   FDCA and NLEA food labeling and packing requirements, including the following

20   provisions that, *inter alia*, form the basis for the "unlawful" prong of plaintiff's UCL

21   claim: Any food is misbranded if its labeling is false or misleading in any

22   particular, *id.* § 110660; Any food is *misbranded if its labeling does not conform with*

23   *the requirements for nutrition labeling set forth in Section 403(q) (21 U.S.C. Sec.*

24   *343(q)) of the federal act and the regulations adopted pursuant thereto, id.* §

25   110665 (emphasis added); ¶¶106-111. In addition, the unlawful prong may also be

26   predicated on a violation of Plaintiff's other claims.

27        With respect to the unfair prong, the Ninth Circuit has instructed that the court

28   must "balance the harm to the consumer against the utility of the defendant's

---

1    practice." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

2    Here, Plaintiffs allege the product labels represent the beverages contain an ingredient

3    which they do not, and in so doing, deceived Plaintiffs and class members into paying

4    a premium price for the product and damaging them thereby.  The only utility to

5    Defendant's practice is to enable it to sell more product, which is neither a laudable,

6    nor legitimate reason to deceive consumers, and certainly not one that outweighs the

7    harm it causes. *Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317, 1329-1330

8    (S.D. Cal. 2019) (Defendant's utility of selling its Products to consumers who

9    otherwise would not purchase an artificially-flavored food product is small and far

10   outweighed by the gravity of the harm inflicted on California's consumers.)

11       Finally, a business act or practice is "fraudulent" under the Unfair Competition

12   Law if it  deceives or is likely to deceive members of the consuming public. *Berryman*

13   *v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556 (2007). For the same

14   reasons detailed above Plaintiffs satisfy the fraudulent prong of the UCL.

15       Defendant's reliance on *Clark v. Westbrae Nat., Inc.*, No. 20-cv-03221-JSC,

16   2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020) is misplaced. In *Clark*, the

17   plaintiff alleged that a reasonable consumer would understand the term vanilla on a

18   product label to mean that the vanilla flavor was imparted "exclusively from the

19   vanilla bean plant" and not also derived from other flavoring sources. Dismissing the

20   complaint, the Court found that the barebone allegations offered no explanation of

21   how a consumer could reasonably conclude that "vanilla" means "exclusively derived

22   from the vanilla bean." The Court specifically noted that the label does not provide

23   any additional information such as a picture and the complaint does not allege the

24   product is entirely devoid of vanilla bean. With respect to plaintiff's survey data, the

25   Court found it to be too vague and therefore unpersuasive as plaintiff even minimally

26   failed to allege what the survey asked, rendering its utility moot. Finally, the Court

27   recognized that this is a highly factual inquiry, the subtleties of which could lead to a

28   different conclusion (*citing Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94

---

1   (E.D.N.Y. Aug. 24, 2020) (holding that the plaintiffs plausibly alleged that label

2   reading "made with aged vanilla" implies that the product's vanilla flavor is derived

3   predominantly from the vanilla plant).

4        In contrast to *Clarke*, here, Plaintiffs' allegation is that the characterizing

5   ingredient (*e.g.,* orange) is *entirely absent* from the product formulation despite a label

6   that states "orange" by name and supports it with a prominent picture of an orange

7   slice. Plaintiffs here also allege significant details as to both the materiality and

8   deceptiveness of these claims.  ¶¶ 31-44 (describing how flavoring in a product is a

9   material consideration to consumers), ¶¶ 51-55 (providing legislative history

10  underlying and intent to protect consumers from deceptive practices); ¶¶ 56-59

11  (describing why product labels matter to reasonable consumers); and ¶¶ 60-63

12  (describing how label accuracy in a competitive marketplace is critical to ensuring

13  consumers can make informed purchasing decisions.)

14       As demonstrated above, Plaintiff has plead the who, what, when, where and

15  how required by required by 9(b) as has therefore properly pled a claim under the

16  fraudulent prong of the UCL.

17

18  ### 2.   Plaintiffs State a Claim Under California's False Advertising Law

19       California's False Advertising Law prohibits the dissemination of false or

20  misleading statements in connection with advertising. CAL. BUS. & PROF. CODE §

21  17500. "Section 17500 has been broadly construed to proscribe not only advertising

22  which is false, but also advertising which, although true, is either actually misleading

23  or which has a capacity, likelihood or tendency to deceive or confuse the

24  public." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006).

25  Defendant markets a product claiming to contain a fruit, which it does not contain.

26  Despite being characterized by name and vignette, the product is entirely devoid of

27  that fruit. In evaluating whether a statement is misleading, the court looks primarily to

28

the words of the statement itself, and compares those words to the actual facts. *Id;*
*Viggiano*, 944 F. Supp. 2d 877, 885-886. Here, Defendant markets and labels a line of
products characterized by fruit by both name and vignette, yet that fruit is not an
ingredient in the product. This type of labeling not only is likely to deceive a
reasonable consumer, but is also patently false.

### 3.   Plaintiffs State a Claim Under the Consumer Legal Remedies Act

The CLRA makes illegal various "unfair methods of competition and unfair or
deceptive acts or practices undertaken by any person in a transaction intended to result
or which results in the sale or lease of goods or services to any consumer." CAL. CIV.
CODE § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates
the CLRA. *Colgan*, 135 Cal.App.4th 663, 680 (quoting *Nagel v. Twin Laboratories,
Inc.*, 109 Cal.App.4th 39, (2003)).

A "reasonable consumer" is an "ordinary consumer acting reasonably under the
circumstances," who "is not versed in the art of inspecting and judging a product, [or]
in the process of its preparation or manufacture. . . ." *Id. (citing* 1A CALLMANN ON
UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed. 2004)).
Plaintiffs allege that Defendant's conduct violates three sections of the CLRA:

- §1770(a)(5) prohibits "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities  which they do not have. . . .;"

-  §1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and

- §1770(a)(9) prohibits "advertising goods with intent not to sell them as advertised."

The CLRA is to be "liberally construed and applied to promote its underlying
purposes, which are to protect consumers against unfair and deceptive business

practices and to provide efficient and economical procedures to secure such protection." *Colgan*, 135 Cal.App.4th at 680.[7] Plaintiffs' allegations violate all three sections of the CLRA and the cause of action should be sustained.

### G. PLAINTIFFS ADEQUATELY PLEAD NEW YORK GENERAL BUSINESS LAW CLAIMS

General Business Law ("GBL") §349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL §349 (a).  Similarly, GBL §350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." These consumer protection statutes were enacted to "strik[e] down all forms of deceptive acts and practices."  Both Section 349 and Section 350 provide a private right of action for "any person who has been injured by reason of any violation of th[ese] section[s]," allowing injunctive relief and damages. GBL §349(h) and GBL §350-e(3).

To state a claim under GBL §§349 and 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially

---

[7] Defendant's claim that Plaintiff failed to allege that Celsius was aware of its label deficiency at the time of sale is simply disingenuous. Defendant formulated the product and was entirely responsible for its labeling.  As a beverage and/or dietary supplement manufacturer, Celsius is acutely aware of its obligations under the FDCA, including 21 C.F.R. §101.22 which has been the law of the United States and the law in the state of California.  Although self-evident, Celsius also confirmed its knowledge of, and obligation to comply with the FDCA in its annual sworn filing under the Securities and Exchange Act.  "The production, distribution and sale of our products in the United States is subject to the Federal Food, Drug and Cosmetic Act, the Dietary Supplement Health and Education Act of 1994, the Occupational Safety and Health Act, various environmental statutes and various other federal, state and local statutes and regulations applicable to the production, transportation, sale, safety, advertising, labeling and ingredients of such products." Form 10-K.

---

1   misleading, and that (3) the plaintiff suffered injury as a result of the allegedly
2   deceptive act or practice. See e.g., *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d
3   940, 941 (2012). A plaintiff claiming the benefit of either Section 349 or Section 350
4   "must charge conduct of the defendant that is consumer-oriented" or, stated
5   differently, "demonstrate that the acts or practices have a broader impact on
6   consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland*
7   *Bank*, 85 N.Y.2d 20, 25 (1995). Marketing actions 'are consumer-oriented in the sense
8   that they potentially affect similarly situated consumers.'" *Id.* at 26-27.

9         Notably, the deceptive practice does not have to rise to "the level of common-
10   law fraud to be actionable under section 349." *Boule v. Hutton*, 328 F.3d 84, 94 (2d
11   Cir. 2003) (citing *Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 343 (1999)). In
12   fact, "[a]lthough General Business Law §349 claims have been aptly characterized as
13   similar to fraud claims, they are critically different." *Gaidon*, 94 N.Y.2d at 343.  A
14   plaintiff need not prove that the defendant acted intentionally or with scienter. *Watts v.*
15   *Jackson Hewitt Tax Service*, 579 F. Supp, 2d 334, 347 (E.D. NY 2008).  While
16   reliance is an element of a fraud claim, it is not an element of a GBL §349
17   claim. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) ("a practice is misleading
18   under where it is "likely to mislead a reasonable consumer acting reasonably under the
19   circumstances").

20         Plaintiffs' claim has all the attributes of a GBL §§349 and 350 cause of action
21   in that it involves consumer oriented deceptive conduct.

22
23         1.  **Plaintiffs Adequately Plead Celsius' Labeling is Deceptive to a**
            **Reasonable Consumer**
24
25         Defendant's GBL argument turns entirely on its contention that consumers, in
26   fact, would not be confused. As set forth above, that is not a finding that can be made
27   in this case at the pleading stage.  As the FAC alleges, Defendant's failure to indicate,
28   on the front label, that a product does not contain ***any*** of its characterizing ingredient,

but rather, is flavored by lab synthesized chemicals, is deceptive, misleading and in violation of state and common laws designed to protect consumers and to promote consistent, honest and transparent labeling.

Plaintiffs have sufficiently alleged Defendant's Product is entirely absent of its characterizing ingredient and its labeling is on that basis deceptive. *See Sharpe v. A&W Concentrate Company*, 481 F.Supp.3d 94, 104 (E.D.N.Y. 2020) (where plaintiffs alleged that the beverages at issue *never contained any* natural vanilla, the Court could not find as a matter of law that no reasonable consumer would be misled by defendants' labeling of its products and allowed GBL §§ 349 and 350 claims to proceed) (emphasis added). Ultimately, whether a reasonable consumer would expect that Defendant's Product contains *at least some* of the fruit (e.g., orange) depicted by name and vignette on the packaging, and whether that is a material element on which a reasonable person could base a purchase decision, is inappropriate for adjudication at this stage of the litigation.

None of the cases cited by Defendant indicate otherwise, and they are critically distinguishable from the allegations in this case. *See, Twohig v. Shop-Rite Supermarkets, Inc*., No. 20-CV-763, 2021 WL 518021 (S.D. N.Y. Feb. 11, 2021) and *Cosgrove v. Oregon Chai, Inc*., No. 19 Civ. 10686, 2021 WL 706227 (S.D. N.Y. Feb. 22, 2021) (finding that labeling would not lead a reasonable consumer to believe that vanilla from vanilla beans is the ***exclusive or predominant*** flavor ingredient); *see also Melendez v. ONE Brands, LLC*, No. 18-cv-06650, 2020 WL 1283793 (E.D. N.Y. March 16, 2020) (ruling that the ingredients list on the back of the product clarified any confusion created by the front label as to the predominance of any ingredient, and that no reasonable consumer could have been misled in light of that clarifying language). Significantly, like *Gerber* in the Ninth Circuit, the Second Circuit also maintains that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large

bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).

## 2.  **Plaintiffs Adequately Plead Economic Injury**

Under New York law, a price premium constitutes an actual injury compensable under Section 349. *See Cox v. Microsoft Corp.*, No. 105193/2000, 2005 WL 3288130, at *5, (N.Y.Sup.Ct. July 29, 2005).

An actual injury claim under § 349 typically requires a plaintiff to "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Mason v. Reed's Inc.*, 18-cv-10826, 2021 WL 293326 *4 (S.D.N.Y. Jan. 28. 20221) quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). This injury may be in the form of an overpayment or "price premium," whereby a plaintiff pays more than she would have but for the deceptive practice. *See, e.g., Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding adequately pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Mason*, *supra, quoting Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 2011 WL 9962089 *6 (N.Y. Sup. Ct. Feb. 25, 2011) (recognizing adequately pled §349 injury where plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had he known it contained only 15 pounds of propane).

Plaintiff Cavallero sufficiently alleged that, in reliance on the claims made by Defendant regarding the qualities of its Beverages – that they contained at least some of the fruit (e.g., orange) depicted by name and vignette on the packaging (¶21) – he "paid a price premium (¶77)" for Products that "lacked the promised ingredients which he reasonably believed they contained (¶79), and he lost money and thereby suffered injury as he would not have purchased these Beverages and/or paid as much for them absent the misrepresentation (¶¶80, 82)."

Importantly, even the cases cited by Defendant acknowledge allegations such as Plaintiffs' in this case are sufficient to plead a price premium injury under §§349 and

350.  Simply put, Plaintiff Cavallero's allegations that he purchased a product and did not receive the full value of his purchase – that he paid too much – constitute separate price-premium injury. *See, Colpitts v. Blue Diamond Growers*, No. 20 Civ. 2487, 2021 WL 981455 at *12 (S.D. N.Y. March 16, 2021) and *Silva v. Smucker Natural Foods, Inc*., No. 14–CV–6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) (plaintiffs plausibly alleged actual facts to show that they paid extra for items that turned out to be of lesser quality, and, therefore, were in fact worth less than what plaintiffs had paid and what the advertisements had led them to believe.)

Defendant's argument that Plaintiff Cavallero "purchased a can of Celsius and he received the contents of a can of Celsius" (Def. Mem. at 22), entirely misses the point and ignores Plaintiff's allegations – that the Product did not contain at least some of the fruit (e.g., orange) depicted by name and vignette on the packaging – and rests on the seriously flawed and untrue premise that he received what he bargained for. He did not. Critically, whether Plaintiff did or did not receive exactly what he bargained for is a purely factual issue inappropriate for adjudication at the pleading stage.

**H.    PLAINTIFFS STATE A CLAIM FOR RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT**

Plaintiffs' final cause of action for restitution based on quasi-contract/unjust enrichment should also be sustained for the reasons detailed above. The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another. *Berger v. Home Depot USA*, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014). Defendants have profited from the sale of Class products which were sold at a premium as a result of a false and misleading label claims resulting in monetary damage to Plaintiffs and the Class. *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1197 (S.D. Cal. 2015)(sustaining unjust enrichment claim where Defendant food manufacturer was enriched at the expense of plaintiffs and class members, who did

not receive the goods to which they were entitled); *Jones v. Conagra Foods, Inc.*, 912 F. Supp. 2d 889, 904 (N.D. Cal. 2012)(sustaining an unjust enrichment claim based on quasi-contract as non-duplicative of other causes of action); *Mason v. Reed's Inc.*, No. 18-cv-10826 (JGK), 2021 U.S. Dist. LEXIS 16556, at *20-21 (S.D.N.Y. Jan. 28, 2021)(sustaining unjust enrichment claim where plaintiff alleged that the defendant benefited at the plaintiff's expense and alleged that equity and good conscience require restitution because the defendant's profit was due to allegedly untrue or misleading statements).

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss Plaintiffs First Amended Complaint in its entirety. As this is the Court's first consideration of Plaintiffs' pleading, to the extent that the FAC is deficient in any respect, Plaintiffs' request leave to amend.

DATED: June 18, 2021                    Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:  (213) 401-4100
Email:  mdb@kuzykclassactions.com

**POMERANTZ LLP**
Jordan L. Lurie
Ari Y. Basser
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 432-8492
E-Mail:  jllurie@pomlaw.com
            abasser@pomlaw.com