1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11   JIMY RUIZ and MICHAEL              Case No.:  3:21-cv-00128-GPC-KSC
     CAVALLERO on behalf of themselves
12   and all others similarly situated,     **ORDER:**

13                            Plaintiffs,   **(1) DENYING DEFENDANT'S**
14   v.                                     **MOTION TO DISMISS; AND**
15   CELSIUS HOLDINGS, INC.,                **(2) DENYING AS MOOT**
16                            Defendant.    **PLAINTIFFS' APPLICATION TO**
                                            **FILE SUR-REPLY**
17
18                                          **[ECF No. 20.]**
19

20        Before the Court is Defendant Celsius Holdings, Inc.'s Motion to Dismiss the First

21   Amended Complaint of Plaintiff Jimy Ruiz and Michael Cavallero.  ECF No. 20.  The

22   motion has been fully briefed.  ECF Nos. 25, 26.  The Court finds the motion suitable for

23   disposition without a hearing pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set

24   forth below, the Court **DENIES** Defendant's motion to dismiss and also **DENIES AS**

25   **MOOT** Plaintiffs' application to file a sur-reply.

26
27
28

I.    **BACKGROUND**[1]

Plaintiffs Jimy Ruiz and Michael Cavallero ("Plaintiffs") are individuals residing in Chula Vista, California and White Plains, New York, respectively, who were frequent purchasers of the "healthy energy" drink products sold by Defendant Celsius Holdings, Inc. ("Defendant").  ECF No. 13 ("FAC") ¶¶ 2, 5, 11, 19.  Defendant manufactures, markets, advertises, and sells beverages that tout healthful ingredients as compared to competing energy drinks.  *Id.* ¶¶ 2 –3.  The front labels on the beverages feature a name, such as "Sparkling Orange," and an image (or vignette) of the fruit identified by the name.  *Id.* ¶¶ 5, 36.  However, the beverages do not contain the ingredient reflected in the name and vignette, but rather "natural flavor."  *Id.* ¶ 6.  Plaintiffs purchased Defendant's beverages that featured names such as Sparkling Orange, Peach Mango Green Tea, Sparkling Grape Rush, and Sparkling Strawberry Guava, believing that the beverages contained the fruits depicted by the name and vignette.  *Id.* ¶¶ 12–13, 20–21.  Plaintiffs would not have purchased Defendant's beverages or would not have paid as much for them had they known that the beverages did not include the depicted fruits, and thus lost money as a result of the alleged misrepresentation.  *Id.* ¶¶ 16, 24, 80.

On January 22, 2021, Plaintiffs filed their initial putative class action complaint. ECF No. 1.  On March 26, 2021, Defendant filed a motion to dismiss.  ECF No. 10.  On April 16, 2021, Plaintiffs filed their First Amended Complaint ("FAC"), asserting putative class claims on behalf of themselves and other consumers for (1) breach of express warranty, Cal. Comm. Code § 2313; (2) unlawful business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) unfair business practices in violation of the UCL; (4) fraudulent business practices in violation of the UCL; (5) false advertising in violation of the False

---

[1] The factual background in this section is drawn from Plaintiffs' First Amended Complaint.

1
2
3
4
5
6
7

Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (6) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (7) violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law ("GBL") § 349 *et. seq.*; (8) violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 350 *et. seq.*; and (9) restitution based on quasi-contract/unjust enrichment. FAC ¶¶ 96–156. On May 14, 2021, Defendant filed the instant motion to dismiss the FAC. ECF No. 20.

8

## II.   LEGAL STANDARD

9
10
11
12
13
14
15
16

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

17
18
19
20
21
22
23
24
25
26
27

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

28

3:21-cv-00128-GPC-KSC

the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citations omitted).

## III.   DISCUSSION

Defendant moves to dismiss the FAC in its entirety on the basis of lack of standing, failure to comply with Rule 9(b), and failure to state a claim.  Plaintiffs oppose.

### A. Standing

Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization.  *Id.*  An injury is "particularized" if it affects "the plaintiff in a personal and individual way."  *Id.*  In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract."  *Id.*  However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549.  "Economic injury is clearly a sufficient basis for standing."  *San Diego Cnty. Gun Rights Committee v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury.").

The plaintiff bears the burden of demonstrating the elements of Article III standing.  *Spokeo, Inc.*, 136 S. Ct. at 1547.  At the pleading stage, the plaintiff "must

'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  In a class action, Article III standing is met at the motion to dismiss stage if at least one named plaintiff satisfies the requirements.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Defendant disputes that Plaintiffs have met any of the three Article III standing requirements.  ECF No. 20-1 at 13–15.  As to the injury in fact requirement, Plaintiffs allege that they suffered economic injury because they paid more for the beverages than they otherwise would have, believing that the beverages contained real fruit as a result of Defendant's labeling.  FAC ¶¶ 75, 77, 80.  Defendant argues that a conclusory allegation that a consumer paid more than she believes she should have does not suffice to demonstrate injury.  ECF No. 20-1 at 15 (citing *McGee v. S-L Snacks National*, 982 F.3d 700, 710 (9th Cir. 2020)).  But *McGee* stands for the opposite of what Defendant suggests, as it notes that the Ninth Circuit "has consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee*, 982 F.3d at 706.  The Ninth Circuit distinguished the allegations in *McGee* from this line of cases because the plaintiff did not allege the defendant misrepresented the product, causing her to overpay.  *Id.* at 707.  Plaintiffs here have alleged that they would not have purchased, or would have paid less for, Defendant's beverages if Defendant had not represented that the beverages contained fruit.  This is sufficient to establish injury in fact.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("To the extent that class members were relieved of their money by Honda's deceptive conduct— as Plaintiffs allege—they have suffered an 'injury in fact.'"); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 917 (N.D. Cal. 2013) ("palpable economic injuries have long been recognized as sufficient to lay the basis for standing") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972)).

3:21-cv-00128-GPC-KSC

1    Defendant's arguments regarding traceability and redressability also fail.

2    Although Defendant contends that Plaintiffs only have themselves to blame for paying

3    the alleged price premium, the FAC alleges that the product labeling led Plaintiffs to

4    believe that the beverages contained fruit, and that they relied on this representation when

5    deciding to purchase the product.  FAC ¶¶ 74–78.  Since the Court must accept as true the

6    allegation that Plaintiffs paid what they did for the beverages because the front labels

7    caused them to believe the beverages contained fruit, whether Plaintiffs have adequately

8    alleged that reliance on the beverage name and vignette was *reasonable* is not a question

9    of causation, but rather of whether Plaintiffs have stated a claim arising from fraud.

10   Further, Plaintiffs' alleged economic injury of overpaying could be redressed by damages

11   or restitution.[2]  *See Coe v. Philips Oral Healthcare Inc.*, No. C13-518-MJP, 2014 WL

12   722501, at *4 (W.D. Wash. Feb. 24, 2014) (citing *Association of Public Agency*

13   *Customers v. Bonneville Power Admin.*, 733 F.3d 939, 954 (9th Cir. 2013)) ("Without

14   question, the relief sought—compensation for the overpayment—remedies the alleged

15   injury.").  Additionally, although not addressed by Defendant, because Plaintiffs are

16   previously deceived consumers who would purchase Defendant's product in the future if

17   the beverages were not misleadingly marketed, they have alleged standing to seek an

18   injunction.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–71 (9th Cir.

19   2018); FAC ¶¶ 18, 26, 84.

20   The Supreme Court's recent decision in *TransUnion* is inapposite.[3]  That case held

21   that a plaintiff who "has not suffered any physical, monetary, or cognizable intangible

---

[2] Defendant contends, for the first time on reply, that Plaintiffs have failed to allege an inadequate remedy at law under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 944 (9th Cir. 2020).  ECF No. 26 n.3.  Because Defendant raised this issue for the first time on reply, the Court need not consider it. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

[3] Plaintiffs filed an ex parte application to file a sur-reply on this issue, noting that Plaintiffs agreed that they would not oppose any request by Defendant to file a sur-sur reply.  *See* ECF No. 28.  Because the Court easily concludes that *TransUnion* does not affect the standing analysis in this case, the Court sees

6

1   harm traditionally recognized as providing a basis for a lawsuit in American courts" lacks

2   Article III standing even if Congress provides a cause of action to sue for a defendant's

3   violation of law.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021).  Plaintiffs

4   here allege monetary harm in the form of overpayment, a form of injury that the

5   *TransUnion* court noted would confer standing.  The fact that Plaintiffs' complaint makes

6   reference to FDCA labeling requirements does not transform them from purchasers that

7   allege monetary loss as a result of alleged deceptive labeling into "unharmed plaintiffs

8   seeking to enforce general compliance with regulatory law."[4]  ECF No. 26 at 8; *cf. In re*

9   *Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp.

10  3d 927, 947 (N.D. Cal. 2018) ("Even if Plaintiffs' claims were tied to EPA and CARB

11  emission standards . . . Plaintiffs allege that they paid money for the Class Vehicles that

12  they would not have otherwise spent but for Defendants' misrepresentations and

13  concealment of material facts.").

14       While not directly raised by Defendant, because it concerns subject matter

15  jurisdiction, the Court also briefly addresses whether Plaintiffs have standing to pursue

16  claims related to the other "fruit" beverages that they did not personally purchase.

17  "Courts in this circuit have diverged on the question."  *Donohue v. Apple, Inc.*, 871 F.

18  Supp. 2d 913, 921 (N.D. Cal. 2012) (collecting cases); *see also Coe*, 2014 WL 722501, at

19  *4.  The Court concurs with the majority of district courts to consider this issue and finds

20  that at the pleading stage in a putative class action, a plaintiff's claims related to products

21  that are substantially similar to the product purchased by the plaintiff should not be

22

23

24  no need to have the parties engage in further briefing.  Accordingly, the Court **DENIES AS MOOT**
    Plaintiffs' ex parte application.

25  [4] Defendant also argues at length that Plaintiffs do not have standing to enforce the FDCA.  *E.g.*, ECF

26  No. 26 at 9–12.  However, Plaintiffs do not bring a cause of action under the FDCA.  Instead, the FDCA
    is relevant only insofar as Plaintiffs allege it serves as a predicate law for their UCL claim, which the

27  Court discusses *infra*.

28

1    dismissed for lack of standing.  Rather, such issues should be deferred until the class

2    certification stage when the court addresses commonality, typicality, and adequacy.  *See*

3    *Donahue*, 871 F. Supp. 2d at 922; *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1005–

4    06 (N.D. Cal. 2012).  Here, as discussed further below, Plaintiffs allege substantially the

5    same "labeling infirmity" on all of Defendant's "fruit" beverages.  FAC ¶ 28.  Further,

6    Plaintiffs assert claims for injunctive relief, and they state generally that they would

7    purchase Defendant's beverages in the future should they be able to rely on the labeling,

8    which plausibly includes "fruit" beverages in Defendant's product lines other than the

9    ones they purchased previously.  *Id.* ¶¶ 18, 26.

10       Accordingly, the Court finds that Plaintiffs have adequately alleged standing.[5]

11   **B. Rule 9(b)**

12       Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff

13   to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ.

14   P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind

15   may be alleged generally."  *Id.*  A party must set forth "the time, place, and specific

16   content of the false representations as well as the identities of the parties to the

17   misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)

18   (internal quotation marks omitted).

19       Allegations of fraud must be "specific enough to give defendants notice of the

20   particular misconduct which is alleged to constitute the fraud charged so that they can

21   defend against the charge and not just deny that they have done anything wrong."

22   *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137

---

25   [5] Although Plaintiffs address statutory standing for the UCL, FAL, and CLRA claims in their opposition,
26   *see* ECF No. 25 at 12–13, Defendant only raised Article III standing in its motion to dismiss.  As
     statutory standing is not jurisdictional, the Court need not reach the issue sua sponte.  *Jewel v. Nat'l Sec.*
27   *Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011).

28                                                                      3:21-cv-00128-GPC-KSC

F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) *superseded by statute on other grounds*, Private Sec. Litig. Reform Act of 1995, 15 U.S.C. § 78u–4(b)(1), *as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

Rule 9(b)'s requirements apply to state law claims grounded in fraud. *See Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103–05 (9th Cir. 2003) (applying Rule 9(b) to UCL and FAL claims to the extent they alleged fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL and CLRA claims grounded in fraud). Accordingly, Plaintiffs must meet the particularity requirement for their UCL claims (counts two, three, and four), their FAL claim (count five), their CLRA claim (count six), and their New York GBL claims (counts seven and eight)[6] for allegations of fraud.

With respect to the Sparkling Orange beverage, Plaintiffs have successfully identified the "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom*, 486 F.3d at 553. Plaintiffs state that they purchased the Sparkling Orange beverage at specified retailers throughout the class period. FAC ¶¶ 12, 20. Plaintiffs allege that Defendant was responsible for marketing and advertising the beverage and creating the label, and that named Plaintiffs viewed the label. *Id.* ¶¶ 2, 6, 12, 13, 20, 21. Moreover, there appears to be no dispute

---

[6] While the Second Circuit has determined that GBL claims need not meet the Rule 9(b) particularity requirement, *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005), its reasoning appears at odds with the Ninth Circuit's decision in *Kearns*, which held that even claims that do not reflect the elements of common law fraud must meet Rule 9(b)'s requirements if they are grounded in fraud. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 958 (C.D. Cal. 2012). The Court therefore presumes that Rule 9(b) applies to allegations of fraudulent conduct underlying Plaintiffs' GBL claims.

9

that the label depicted and described by Plaintiffs is substantially similar to the label Defendant currently uses to market the Sparkling Orange beverage, giving Defendant adequate notice of the particular misconduct alleged.  *Compare* FAC ¶ 5 *with* ECF No. 20-1 at 8.  Plaintiffs have also explained why the front label of the Sparkling Orange beverage is false and misleading.  Specifically, Plaintiffs allege that the name and vignette of an orange slice mislead prospective purchasers into thinking that the beverage contains orange when it does not contain orange.  FAC ¶¶ 5, 6.  Plaintiffs further allege that consumers rely on front-of-package marketing to make their purchasing decisions, citing to studies, and notes that competitor products explicitly indicate that the beverage is "flavored" on the front label if they do not include orange, or actually include the fruit identified.  *Id.* ¶¶ 66, 70.  While Defendant may disagree that its packaging is misleading to a reasonable consumer, these allegations suffice to put Defendant on notice of how Plaintiffs claim the labeling is false or misleading.  Rule 9(b) is therefore satisfied with respect to Plaintiffs' allegations regarding the Sparkling Orange beverage.  *Cf. In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014) (noting that many courts in California have found similar allegations sufficient to satisfy Rule 9(b) in cases alleging label-based fraud).

The parties also dispute whether Plaintiffs have complied with Rule 9(b) with respect to the varieties of beverage sold by Defendant, as the FAC primarily discusses the labeling of the Sparkling Orange beverage.  ECF No. 20-1 at 19; ECF No. 25 at 14 n.3.  Plaintiffs list several other examples of Defendant's beverages that they purchased and allege to have misleading labels, including Peach Mango Green Tea, Sparkling Grape Rush, and Sparkling Strawberry Guava.  FAC ¶¶ 12, 20.  The FAC also lists the flavors in Defendant's product lines that offer "fruit" beverages "affected by the same labeling

infirmity described herein."[7]  *Id.* ¶ 28, n.3.  By any reasonable reading of the FAC, this alleges that the "fruit" beverages listed feature a front label with the name and vignette of the fruit or fruits identified, leading consumers to believe that the beverage contains the fruit or fruits depicted by the front label when it does not.  Plaintiffs therefore allege a consistent misrepresentation across all of the "fruit" beverages named in the FAC, giving Defendant adequate notice of the particular misrepresentations alleged.  However, should Plaintiffs wish to assert claims relating to products not identified in the FAC, Plaintiffs must amend their complaint to give Defendant notice of the alleged misrepresentations at issue.

Defendant also argues that Plaintiffs fail to adequately plead Defendant's knowledge of the alleged misrepresentations.  ECF No. 20-1 at 19–20.  Under Rule 9(b), knowledge may be alleged generally.  Fed. R. Civ. P. 9(b).  Further, Plaintiffs allege that Defendant both manufactured and marketed the product, FAC ¶¶ 2, 6, so it is plausible to conclude that Defendant was aware the beverage did not contain fruit but was marketed with a label featuring a fruit name and vignette.  Plaintiffs need not allege facts regarding Defendant's state of mind with greater specificity than this at the pleading stage.[8]

\ \ \

---

[7] The products identified in the FAC are: Sparkling Peach Vibe, Sparkling Orange, Sparkling Wild Berry, Sparkling Grape Rush, Raspberry Acai Green Tea, Grapefruit Melon Green Tea, Sparkling Fuji Apple Pear, Sparkling Kiwi Guava, Sparkling Watermelon, Peach Mango Green Tea, Jackfruit, Cherry Lime, Strawberry Dragon Fruit, Blueberry Pomegranate, Sparkling Blood Orange Lemonade, Watermelon Berry, Sparkling Grapefruit, Sparkling Orange Pomegranate, and Sparkling Cucumber Lime.  FAC ¶ 28 n.3.

[8] Defendant's argument that Plaintiffs must allege Defendant was aware of a defect at the time of sale for their CLRA claim is unconvincing.  *Wilson v. Hewlett-Packard* dealt with an alleged fraudulent omission, and stands for the principle that a plaintiff must adequately allege the defendant was aware of a product defect in order to state a CLRA claim arising from the defendant's failure to disclose that defect, because a seller generally has no duty to disclose defects of which it is not aware.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).  Plaintiffs adequately allege that Defendant knowingly made an affirmative misrepresentation by marketing the product with the fruit name and vignette despite being aware the product contained no fruit at the time of sale.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C. Reasonable Consumer Standard

Defendant's primary argument is that Plaintiffs have failed to adequately plead that a reasonable consumer would be misled by the fruit name and vignette on the front label of Defendant's beverages, given that the beverages advertise "0 Sugar," minimal calories, and do not list the fruit in the ingredients on the back panel.  ECF No. 20-1 at 16–18.  Plaintiffs argue that what a reasonable consumer would believe is a factual issue inappropriate for adjudication at the motion to dismiss stage, and that the inclusion of an accurate ingredients label does not render consumers' reliance on the front label unreasonable.  ECF No. 25 at 18–21.

The "reasonable consumer standard" applies to Plaintiffs' claims under the UCL,[9] FAL, CLRA, and GBL.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  "Under the reasonable consumer standard, [a plaintiff] must 'show that members of the public are likely to be deceived.'"  *Williams*, 552 F.3d at 938 (quoting *Freeman*, 68 F.3d at 289); *see also Orlander*, 802 F.3d at 300 (noting that the "materially misleading" prong of GBL claims requires that the act is "likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal citation omitted).  "This requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted).  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the motion to dismiss stage.  *Williams*, 552 F.3d at 938

---

[9] Plaintiffs argue that this standard applies to their "unlawful" UCL claims only insofar as the predicate act contains the reasonable consumer test.  ECF No. 25 at 18.  Because the Court concludes the FAC adequately alleges deception under the reasonable consumer standard, the Court does not resolve this issue.

1    (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–

2    35 (2007)); *Barton v. Pret A Manger (USA) Ltd.*, No. 1:20-CV-04815 GHW, --- F. Supp.

3    3d ----, 2021 WL 1664319, at *5 (S.D.N.Y. Apr. 27, 2021).

4            Plaintiffs' allegations that a reasonable consumer would be deceived by the

5    packaging in this case are similar to those found sufficient in *Williams*.  There, the court

6    noted that the product at issue "is called 'fruit juice snacks' and the packaging pictures a

7    number of different fruits, potentially suggesting (falsely) that those fruits or their juices

8    are contained in the product."  *Williams*, 552 F.3d at 939.  The Ninth Circuit disagreed

9    with the district court's conclusion that no reasonable consumer would be deceived by

10   the representations on the front of the box merely because the ingredients were

11   specifically identified on the side of the box.  *Id.* at 939–40.  Similarly, Plaintiffs

12   maintain here that the front of the packaging includes a name and picture of fruit, which

13   plausibly suggests that a reasonable consumer may be deceived into thinking the

14   beverage contains fruit.  Like the Ninth Circuit found in *Williams*, a reasonable consumer

15   might not "look beyond misleading representations on the front of the [can] to discover

16   the truth from the ingredient list in small print" on the back of the can.  *Id.* at 939.

17   Defendant argues that a reasonable consumer would not conclude that a sugar-free, low-

18   calorie beverage contains any fruit, *see* ECF No. 26 at 6, but this is a factual assertion that

19   depends on whether it is commonly known that it is not possible to make a sugar-free,

20   low-calorie drink that includes any amount of fruit.  Here, Plaintiffs have alleged facts

21   suggesting that consumers rely on front-of-package representations to make their

22   purchasing decisions, that some seek out products that contain "real" ingredients, and that

23   competing products specifically identify if they are fruit "flavored," FAC ¶¶ 49, 66, 70,

24   bolstering their allegation that a reasonable consumer would be deceived.  Regardless of

25   whether Plaintiffs will succeed in convincing a factfinder, "[t]he facts of this case . . . do

26   not amount to the rare situation in which granting a motion to dismiss is appropriate" on

27

28

3:21-cv-00128-GPC-KSC

1   the issue of whether a business practice is deceptive to a reasonable consumer.  *Williams*,

2   552 F.3d at 938–39.

3        Accordingly, the Court finds that Plaintiffs have plausibly alleged that a reasonable

4   consumer would be deceived by Defendant's labeling practices.

5   **D. Failure to State a Claim**

6        Defendant also argues that Plaintiffs fail to state a claim for relief for any of the

7   causes of action asserted in the FAC.

8        1. <u>Count One: Express Warranty</u>

9        Section 2313 of the California Commercial code defines an express warranty.[10]  In

10  short, an express warranty "is a contractual promise from the seller that the goods

11  conform to the promise."  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App.

12  4th 824, 830 (2006).  "To prevail on a breach of express warranty claim under California

13  law, a plaintiff must prove that: (1) the seller's statements constitute an affirmation of

14  fact or promise or a description of the goods; (2) the statement was part of the basis of the

15  bargain; and (3) the warranty was breached."  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d

16  919, 984 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x

17  654 (9th Cir. 2017), *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121

18

19

---

20  [10] The section provides:

21  "(1) Express warranties by the seller are created as follows:
    (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods

22      and becomes part of the basis of the bargain creates an express warranty that the goods shall
    conform to the affirmation or promise.

23      (b) Any description of the goods which is made part of the basis of the bargain creates an express
    warranty that the goods shall conform to the description.

24      (c) Any sample or model which is made part of the basis of the bargain creates an express
    warranty that the whole of the goods shall conform to the sample or model.

25  (2) It is not necessary to the creation of an express warranty that the seller use formal words such as

26  'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation
merely of the value of the goods or a statement purporting to be merely the seller's opinion or

27  commendation of the goods does not create a warranty."

                                            14

28

1   (9th Cir. 2017) (citation omitted).  Product packaging may serve as part of an express

2   warranty.  *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012)

3   (citing Cal. Comm. Code § 2313(b)); *Baird v. Samsung Elecs. Am., Inc.*, No. 4:17-CV-

4   06407-JSW, 2021 WL 1799432, at *3 (N.D. Cal. Jan. 26, 2021).  Typically, "[w]hether

5   the label actually provided a warranty and is likely to deceive a consumer are not

6   appropriate questions to decide on a dismissal motion."  *Augustine v. Talking Rain*

7   *Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1332 (S.D. Cal. 2019) (citation omitted).

8        The Court finds that Plaintiffs have plausibly alleged that the labeling constituted a

9   "description of the goods" warranting that the beverages contained the fruit identified in

10   the name and depicted by the vignette.  Cal. Comm. Code § 2313(b).  While Defendant

11   avers that the picture of fruit merely signifies that the beverage is fruit-flavored, it would

12   be premature to decide at this juncture whether a reasonable consumer would view the

13   label as a promise that the beverage contains fruit, or, as Defendant argues, as a promise

14   that the beverage tastes like the fruit.  The *McKinnis v. Kellogg* case cited by Defendant

15   is distinguishable.  There, the court found that "[a]bsent a representation that Froot Loops

16   contains actual fruit," the plaintiffs failed to state a claim for breach of express warranty

17   where the front of the box included the text "natural fruit flavors" surrounded by small

18   illustrations of fruit.  *McKinnis v. Kellogg USA*, No. CV07-2611ABC(RCX), 2007 WL

19   4766060, at *4–5 (C.D. Cal. Sept. 19, 2007).  The court noted that the term "Froot" was

20   fanciful, not descriptive of the ingredients, and that the illustrations of fruit were only

21   included next to the "natural fruit flavors" text, which was permissible under FDA

22   regulations to convey that the product was flavored.  *Id.*  Here, in contrast, Plaintiffs

23   plausibly allege that the beverage labels include a representation that the beverages

24   contain actual fruit; while Froot Loops promised only "natural fruit flavors," the front

25   label of Defendant's beverages include only the fruit name and vignette and no such

26   clarification that the flavoring is derived from natural flavors.  To the extent *McKinnis*

27

28

suggests that an accurate ingredients panel insulates a defendant from liability, *id.* at \*5, this position is undermined by the Ninth Circuit's decision in *Williams*. *Williams*, 552 F.3d at 939; *cf. Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1178 (2018) (finding plaintiff plausibly alleged that front label for "One A Day" vitamins created express warranty that one gummie would be sufficient for one day's vitamins, even though serving size of two gummies was listed on the back label).

Plaintiffs have also adequately alleged that the warranty that the beverages contained fruit contributed to their purchase of the product, and that the beverages do not in fact contain fruit. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' claim for breach of express warranty.

2. Counts Two, Three, and Four: UCL

A business act or practice may violate the UCL if it is either "unlawful," "unfair," or "fraudulent*." Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). Each of these three adjectives captures "a separate and distinct theory of liability." *Kearns*, 567 F.3d at 1127 (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)). The unlawful prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under the UCL. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). As to the unfair prong, "[a]n unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 530 (1984)). To state a claim under the fraudulent prong of the UCL, a plaintiff must allege that "members of the public are likely to be deceived" by the defendant's acts. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008); *Kearns*, 567 F.3d at 1125.

1

            a.  Unlawful (Count Two)

2        Plaintiffs allege that Defendant's labeling constitutes an unlawful business practice

3   because the labels violate the FDCA, 21 U.S.C. § 301 *et seq.* and implementing

4   regulations, as well as California's Sherman Food, Drug, and Cosmetic Law ("Sherman

5   Law"), Cal. Health & Safety Code § 109875 *et seq.*, which incorporates FDCA

6   regulations.  FAC ¶¶ 103–112.  Plaintiffs point to one regulation, 21 C.F.R. § 101.22,

7   which regulates how labels are permitted to advertise the characterizing flavor of the

8   product depending on whether the flavor is derived from the characterizing ingredient or

9   from other flavors.  21 C.F.R. § 101.22(i).  In short, the regulation provides that "[i]f the

10  food is one that is commonly expected to contain a characterizing food ingredient, and . .

11  . the food contains no such ingredient, the name of the characterizing flavor . . . shall be

12  immediately followed by the word 'flavored,'" for instance, "strawberry flavored

13  shortcake."  21 C.F.R. § 101.22(i)(1)(i).  The regulation also requires that "[i]f none of

14  the natural flavor used in the food is derived from the product whose flavor is simulated,

15  the food . . . shall be labeled either with the flavor of the product from which the flavor is

16  derived or as 'artificially flavored.'"  21 C.F.R. § 101.22(i)(1)(ii).

17       Plaintiffs allege that Defendant's labels characterize the beverages as containing

18  particular fruits, yet do not contain those fruits and do not indicate that the beverage is

19  "flavored" or "artificially flavored."  FAC ¶¶ 57–59.  This would constitute a violation of

20  the FDCA regulation and thus the Sherman Law, which may serve as a predicate

21  violation constituting an unlawful business practice under the UCL.  *See Hilsley v. Gen.*

22  *Mills, Inc.*, 376 F. Supp. 3d 1043, 1050 (S.D. Cal. 2019).  Defendant argues that its

23  product is "a liquid dietary supplement, not a food," and that Plaintiffs fail to allege why

24  it would be commonly expected for the product to contain any particular characterizing

25  food ingredient.  ECF No. 20-1 at 23.  However, the FDCA explicitly provides that "a

26  dietary supplement shall be deemed to be a food within the meaning of" the FDCA

27

28

3:21-cv-00128-GPC-KSC

1   subject to certain exceptions.  21 U.S.C. § 321(ff).  Defendant has also not establish that,

2   as a matter of law, beverages labeled with particular fruits would not be commonly

3   expected to contain the fruit.

4        The Court therefore DENIES Defendant's motion to dismiss the claim under the

5   unlawful prong of the UCL.

6             b.  Unfair (Count Three)

7        Plaintiffs also allege that the same labeling practice is unfair because it causes

8   significant harm to the consumer that outweighs Defendant's conceivable justifications

9   for the practice.  FAC ¶ 116.  Defendant argues that its business practice is not unfair

10   because it does not violate the policy or spirit of antitrust law.  *See* ECF No. 20-1 at 23.

11        While an antitrust violation describes one variety of unfair business practice, the

12   Ninth Circuit has recognized that case law relating to antitrust injury "was limited to

13   actions based on unfairness to competitors."  *Lozano v. AT & T Wireless Servs., Inc.*, 504

14   F.3d 718, 735 (9th Cir. 2007) (noting that for actions between competitors, an unfair

15   practice must be tied to a "legislatively declared" policy).  For actions based on

16   unfairness to consumers, "[i]n the absence of further clarification by the California

17   Supreme Court," the Ninth Circuit concluded that such claims may still be analyzed using

18   the more general "balancing test" articulated in *South Bay Chevrolet v. General Motors*.

19   *Id.* at 736 (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th

20   861 (1999)); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (noting that "the

21   proper definition of 'unfair' conduct against consumers is currently in flux among

22   California courts.") (citation omitted).  In *South Bay*, the California Court of Appeal

23   explained that to determine whether a practice is unfair, "the court must weigh the utility

24   of the defendant's conduct against the gravity of the harm to the alleged victim."  *South

25   Bay*, 72 Cal. App. 4th 861, 886 (1999) (citation omitted); *Davis v. HSBC Bank Nevada,

26   N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

27

28

1    While the Court recognizes the unsettled state of the law regarding the UCL's

2 definition of "unfairness," Defendant has not provided any argument for why the Court

3 should decline to apply the balancing test urged by Plaintiffs.  Accordingly, the Court

4 heeds *Lozano*'s suggestion that a district court does "not apply the wrong legal standard

5 by relying on the balancing test from *South Bay*."  *Lozano*, 504 F.3d at 736.  Plaintiffs

6 have identified the harm to consumers as leading them to pay more money for the

7 product than they otherwise would have absent the misleading labels.  Defendant's

8 justification is that it wishes to advertise the flavor of the product.  Plaintiffs plausibly

9 allege that Defendant's interest in having a front label that advertises fruit without

10 clarifying that the beverages are merely fruit "flavored" is outweighed by the harm to

11 consumers.  *Cf. Beckman v. Arizona Canning Co.*, LLC, No. 3:16-CV-02792-JAH-BLM,

12 2019 WL 4277393, at *11 (S.D. Cal. Sept. 9, 2019) ("Countless food manufactures have

13 successfully displayed and marketed their product without consumer confusion or a

14 likelihood of deception.").  Indeed, as Defendant vociferously argues that its "advertising

15 states that the product is orange flavored," ECF No. 20-1 at 26, it does not explain what

16 interest it has in omitting the word "flavored" from the front of the can other than a

17 general disagreement with the FDCA labeling requirements.

18    Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' claim

19 under the unfair prong of the UCL.

20         c.  Fraudulent (Count Four)

21    As explained above with respect to the "reasonable consumer" issue, the Court

22 finds that Plaintiffs have adequately alleged that "members of the public are likely to be

23 deceived" by the labels into thinking that the beverages contain fruit.[11]  *Sybersound*

---

[11] The case cited by Defendant, *Clark v. Westbrae Natural, Inc.*, is distinguishable because the court found it implausible, based on the facts alleged, that a reasonable consumer would expect the inclusion of the word "vanilla" indicates that the flavor is derived *exclusively* from the vanilla bean.  *Clark v.*

1   *Recs.*, 517 F.3d at 1152.  Accordingly, the Court DENIES Defendant's motion to dismiss

2   Plaintiffs' claim under the fraudulent prong of the UCL.

3        3.  <u>Count Five: FAL</u>

4        California's FAL prohibits any "unfair, deceptive, untrue, or misleading

5   advertising."  Cal. Bus. & Prof. Code § 17500.  "California laws prohibit not only

6   advertising which is false, but also advertising which[,] although true, is either actually

7   misleading or which has a capacity, likelihood or tendency to deceive or confuse the

8   public."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citations

9   omitted).

10       Defendant argues that Plaintiffs have failed to show that Defendant knew or failed

11  to use reasonable care to know their advertising was untrue or misleading.  ECF No. 20-1

12  at 26.  But as explained above, Plaintiffs have plausibly alleged that Defendant included

13  the fruit vignette and name on the beverage labels despite knowing that the beverages did

14  not contain the fruit.  FAC ¶¶ 6, 28, 35, 37.  Plaintiffs have also alleged that Defendant

15  aimed to target more health-conscious consumers with its advertising.  *Id.* ¶¶ 31.  While

16  Defendant argues that its "advertising states that the product is [fruit] flavored," ECF No.

17  20-1 at 26, this is not what the packaging says, according to the FAC.  It is therefore

18  plausible that Defendant was aware of the misleading nature of the product labeling.

19       The Court therefore DENIES Defendant's motion to dismiss the FAL claim.

20       4.  <u>Count Six: CLRA</u>

21       The CLRA prohibits particular unfair and deceptive acts and practices in a

22  "transaction intended to result or which results in the sale or lease of goods or services to

23  any consumer."  Cal. Civ. Code § 1770(a).  "Conduct that is 'likely to mislead a

24

25

26  *Westbrae Nat., Inc.*, No. 20-CV-03221-JSC, 2020 WL 7043879, at *3 (N.D. Cal. Dec. 1, 2020).
    Plaintiffs more plausibly allege that a reasonable consumer would believe a drink advertising a
27  particular fruit contains at least some amount of that fruit.

20

28                                                                          3:21-cv-00128-GPC-KSC

reasonable consumer' violates the CLRA." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006)). Plaintiffs allege that Defendant's labeling constitutes a prohibited practice under the CLRA by representing that the goods have ingredients they do not have, Cal. Civ. Code § 1770(a)(5), representing that the goods are of a particular standard, quality, or grade when they are not, Cal. Civ. Code § 1770(a)(7), and advertising goods with the intent not to sell them as advertised, Cal Civ. Code § 1770(a)(9). A plaintiff must demonstrate actual reliance on the unfair or deceptive act to succeed in a claim under the CLRA. *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009).

Aside from arguments related to the reasonable consumer standard for deception that the Court has already rejected,[12] Defendant contends that Plaintiffs have not stated a CLRA claim because Plaintiffs did not establish actual reliance on the alleged misrepresentations. ECF No. 20-1 at 26. But the FAC alleges that Plaintiff Ruiz believed that the beverages contained fruit as a result of the labeling, and would not have purchased them on the same terms had he known they did not contain fruit. FAC ¶¶ 13, 15, 16. Plaintiffs also allege that the inclusion of "real" ingredients as opposed to natural flavors in food products is a material consideration to many consumers when deciding what products to purchase. *Id.* ¶¶ 48, 49. The FAC therefore sufficiently pleads reliance on the prohibited acts.

Thus, the Court DENIES Defendant's motion to dismiss Plaintiffs' CLRA claim.

\ \ \

\ \ \

---

[12] Because Plaintiffs plausibly allege Defendant engaged in a prohibited act under Section 1770(a)(5), representing the goods have an ingredient they do not have, the Court does not reach Plaintiffs' alternative theories under the CLRA.

1

### 5. Counts Seven and Eight: GBL

2

Under the New York GBL, "[d]eceptive acts or practices" and "[f]alse advertising

3

in the conduct of any business, trade or commerce or in the furnishing of any service in"

4

New York state are unlawful.  N.Y. Gen. Bus. Law §§ 349(a), 350.  "To successfully

5

assert a claim under General Business Law § 349(h)[13] or § 350, a plaintiff must allege

6

that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

7

misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act

8

or practice."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (citation

9

omitted); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

10

"[A] section 349 [or 350] claim will not lie where the deceptive act itself was the

11

only injury," such as when a plaintiff alleges she was deceived into making a purchase

12

and merely seeks a refund of the purchase price.  *Servedio v. State Farm Ins. Co.*, 889 F.

13

Supp. 2d 450, 452 (E.D.N.Y. 2012), *aff'd*, 531 F. App'x 110 (2d Cir. 2013); *Greene v.*

14

*Gerber Prod. Co.*, 262 F. Supp. 3d 38, 67–68, n.12 (E.D.N.Y. 2017) (quoting *Goshen v.*

15

*Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)) (noting that aside from

16

reliance requirement, Section 350 standard is identical to Section 349).  However, the

17

New York Court of Appeals has "left open the possibility that 'a plaintiff might have a

18

claim for the *higher* price the consumer paid for the product as a result of the

19

misrepresentation.'"  *Servedio*, 889 F. Supp. 2d at 452 (quoting *Small v. Lorillard*

20

*Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)) (emphasis in original).  A plaintiff therefore may

21

satisfy the injury requirement by articulating a "price premium" theory, or alleging that

22

the deceptive practice caused her to pay more than the product was actually worth.  *Id.* at

23

453; *see also Orlander*, 802 F.3d at 302 (finding that a plaintiff need only "allege that, on

24

25

26

[13] Section 349(h) provides a private right of action.  N.Y. Gen. Bus. Law § 349(h).  The private right of
action for Section 350 claims is provided in Section 350-e. N.Y. Gen. Bus. Law § 350-e(1).

27

28

account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase," and finding requirement satisfied where the plaintiff "did not receive the services that Defendant misleadingly told Plaintiff he was purchasing"); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 114 (E.D.N.Y. 2020); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014).

Defendant argues that Plaintiff Cavallero has not sufficiently alleged a separate injury under the GBL, since he bought a can of Defendant's beverage and received a can of Defendant's beverage. ECF No. 20-1 at 29. Plaintiffs contend that they have plausibly alleged that they paid a price premium for Defendant's beverages because the beverages lacked the promised ingredients and they would not have paid as much for them had they known the truth. ECF No. 25 at 31.

Courts have differed somewhat in determining what is needed to allege a "price premium" theory of injury under the GBL. In an unpublished Ninth Circuit case, for instance, the court found that the plaintiffs had failed to allege they paid a price premium for a Starbucks DoubleShot Espresso beverage that did not actually contain two shots of espresso, reasoning that the plaintiffs had alleged no details regarding the price premium and concluding that "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury" under the GBL. *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (granting leave to amend "to allege the necessary factual details concerning the alleged price premium they paid"). The district court in *Greene v. Gerber* also considered whether specific alleged facts supported the plaintiff's claim that she paid a price premium for infant formula marketed as allergy-reducing, including that parents value a formula's ability to prevent allergies and that formulas without allergy claims were priced lower. *Greene*, 262 F. Supp. 3d at 68. However, that court clarified that a plaintiff need not identify precisely comparable products to support her price premium theory at the motion to dismiss stage. *Id.* at 69. Several other district courts in New York

have found price premium injuries sufficiently pleaded despite minimal factual enhancement where the products the plaintiffs ultimately received did not contain the attributes the defendants had advertised. *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 198 n.19 (E.D.N.Y. 2018) (noting that weight of authority in Second Circuit "allow[s] complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss"); *Koenig*, 995 F. Supp. 2d at 288 (finding price premium injury adequately pleaded for milk misleadingly advertised as fat-free); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *23 (E.D.N.Y. Sept. 22, 2015) (finding price premium allegations sufficient where plaintiffs alleged defendants commanded a premium for yogurt by deceiving customers about the attributes of the yogurt). *But see Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) ("[P]laintiff only conclusorily asserts that [defendant] charges a premium for its products and provides no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products.").

Here, the Court concludes that Plaintiffs have pleaded sufficient facts to support their price premium theory at the motion to dismiss stage. Plaintiffs have alleged that consumers seek out products that feature "real" ingredients and that at least one competitor changed its formulation to include fruit as customer demand transparency and "clean labeling." FAC ¶¶ 49, 50. Because these allegations suggest that the inclusion of real fruit is valued by consumers, Plaintiffs plausibly allege that they paid a price premium for a beverage they believed contained fruit. *Cf. Daniel*, 287 F. Supp. 3d at 196 ("In most cases, 'price premium' should . . . be observable through an increased price in comparison to products without the desirable quality."). Following the district court in *Greene*, 262 F. Supp. 3d at 69, the Court declines to dismiss the GBL claims on the ground that Plaintiffs have not alleged a precisely comparable product to demonstrate the

amount of the price premium, as whether Plaintiffs can indeed show that they paid a price premium is a question of fact not properly determined at the pleading stage.

Further, as found above, Plaintiffs adequately allege Defendant's labeling is deceptive. New York case law does not compel a different finding for the GBL claims. Notably, the Second Circuit has applied the same "reasonable consumer" standard to claims under both New York's GBL and California's UCL and FAL, including the holding in *Williams* that reasonable consumers should not be expected to review information on the product's back label to correct misrepresentations on the front label. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636–38 (2d Cir. 2018) (citing *Williams*, 552 F.3d at 939).

Accordingly, the Court DENIES Defendant's motion to dismiss the GBL claims.

6. Count Nine: Quasi-Contract or Unjust Enrichment

Defendant only challenges Plaintiffs' equitable claims on the grounds that Plaintiffs have failed to allege that Defendant's product labels are false, misleading, or untrue. ECF No. 20-1 at 30. Because the Court finds Plaintiffs adequately allege that the labels would be deceptive to a reasonable consumer, the Court DENIES Defendant's motion to dismiss the quasi-contract or unjust enrichment claims.

**IV.   CONCLUSION**

For the reasons set forth above, the Court:

1. DENIES AS MOOT Plaintiffs' Application to File Sur-Reply; and

2. DENIES Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: July 27, 2021

Hon. Gonzalo P. Curiel
United States District Judge

25